UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NICHOLAS SMITH and JENNIFER LYNN TAYLOR-SMITH,<br><br>  Plaintiffs,<br><br>  v.<br><br>NORTHROP GRUMMAN, a Delaware corporation,<br><br>  Defendant. | Case No. 5:13-cv-03942-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 48 |

Plaintiff Nicholas Smith[1] filed the instant employment action against Defendant Northrop Grumman Corporation ("Northrop"), alleging wrongful termination and disability discrimination. Presently before the court is Northrop's Motion for Summary Judgment. See Mot., Dkt. No. 48.

Federal jurisdiction arises pursuant to 28 U.S.C. §§ 1441 and 1446. Oral argument on this matter was held on December 3, 2015. After carefully considering the parties' pleadings and evidence, along with the parties' oral argument, the court will GRANT IN PART AND DENY IN PART Northrop's Motion for Summary Judgment, for the reasons explained below.

I.  **BACKGROUND**

  A.  **Factual Background**

Northrop is a corporation that has a plant in Sunnyvale, California where naval propulsion units, missile launch and control systems, and related equipment for submarines are manufactured.

---

[1] Plaintiff Jennifer Lynn Taylor-Smith's sole claim in this case was previously dismissed by the court. See Dkt. No. 20. Thus, Plaintiff Nicholas Smith is the only remaining plaintiff.

1
Case No.: 5:13-cv-03942-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Many of the employees at the Sunnyvale plant are members of labor unions. Fabrication workers, in particular, are members of the International Association of Machinists and Aerospace Workers, Local Lodge 93 (the "Union"), and are covered by a collective bargaining agreement ("CBA") between Northrop and the Union. In 2008, Plaintiff began working at the Sunnyvale plant as a welder. He was a member of the Union and was covered by the CBA.

On May 1, 2011, Plaintiff was involved in an off-duty motorcycle accident that caused him to be quadriplegic. On September 26, 2011, after Plaintiff's Family and Medical Leave Act ("FMLA") leave expired, his doctor wrote a letter that was submitted to Northrop stating Plaintiff was "paralyzed and unable to return to work." See Dkt. No. 48, Def.'s Ex. 1. On November 16, 2011, Plaintiff's doctor wrote another letter that was submitted to Northrop stating that Plaintiff "will be permanently out of work." See Def.'s Ex. 2. Consequently, Northrop extended Plaintiff's medical leave for the duration of its two-year leave program, through May 1, 2013. See Def.'s Ex. 3.

During Plaintiff's leave, on April 16, 2012, Plaintiff's doctor wrote a letter that was submitted to Northrop stating that that Plaintiff "is able to return to work with restrictions," but he "is unable to do any manual labor." See Dkt. No. 52, Pl.'s Ex. 6; Def.'s Ex. 4. The letter further stated that he "may work in a managerial capacity" and perform tasks "not involving heavy physical labor." See id. Moreover, the doctor included a "Leave of Absence Return to Work Authorization" form, which set the following work restrictions: no climbing, no working at heights, no working in tight or confined areas, and no lifting over five to ten pounds. See id.

On May 7, 2012, Northrop convened an internal Reasonable Accommodation Committee ("RAC") composed of certain Northrop managers and Union representatives in order to review Plaintiff's work restrictions, and determine whether Plaintiff could return to work as a welder. See Pl.'s Ex. 15; Dep. of Abbigail Cece at 41. On June 19, 2012, Plaintiff visited the Sunnyvale plant and met with supervisor Joe Sutter, Health and Safety Analyst Marilu Perfetto, Union steward Jess Wallace, and Labor Relations Manager Ozzie Noble ("Mr. Noble"), to discuss his work

2
Case No.: 5:13-cv-03942-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1  restrictions and potential accommodations. At the meeting, Plaintiff submitted a letter expressing

2  his desire to return to work, and offering ways in which he could contribute to the company. See

3  Pl.'s Ex. 7.

4  Thereafter, Northrop considered Plaintiff for an open position as Tool Stock Controller.

5  The Tool Stock Controller helps manage inventory, tools, and supplies for the plant, which

6  involves use of database applications, internal requisition procedures, and desktop computing

7  skills. Plaintiff had a phone interview with supervisor Jeff Prather regarding his qualifications,

8  and Northrop performed a physical assessment to determine whether the work space was

9  accessible. Ultimately, Plaintiff was not hired for the position.

10  On February 21, 2013, Northrop's Human Resource Service Center ("HRSC") sent

11  Plaintiff a letter advising that his two-year leave of absence expired on May 1, 2013. See Pl.'s Ex.

12  9; Def.'s Ex. 5. Subsequently, on March 6, 2013, Plaintiff sent a letter to Dale MoDavis ("Mr.

13  MoDavis"), Vice President of Operations at Northrop, again expressing his desire to return to

14  work. See Pl.'s Ex. 8; Def.'s Ex. 22. Along with the letter, Plaintiff enclosed a doctor's note

15  dated January 9, 2013, which stated that Plaintiff had "been cleared to return to work," and

16  "[d]uties would be limited only by his restricted ability to navigate smaller spaces." See id.

17  On May 7, 2013, Northrop sent a letter to Plaintiff stating that he had exceeded his two-

18  year leave of absence, and as such, Plaintiff was terminated. See Def.'s Ex. 6.

### B. Procedural History

Plaintiff obtained a right-to-sue letter from the California Department of Fair Employment and Housing. See Compl., Dkt. No. 1. On July 15, 2013, Plaintiff and his wife Jennifer Lynn Taylor-Smith ("Ms. Taylor-Smith") commenced the instant action against Northrop in Santa Clara County Superior Court, asserting the following claims: (1) disability discrimination; (2) failure to accommodate; (3) denial of good faith interactive process; (4) failure to prevent discrimination; (5) violation of public policy; and (6) loss of consortium. See id. On August 23, 2013, Northrop removed the action to this court on the basis of diversity jurisdiction. See Notice of Removal,

3

Case No.: 5:13-cv-03942-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Dkt. No. 1.

Northrop subsequently filed a motion to dismiss Ms. Taylor-Smith's claim for loss of consortium. See Dkt. No. 4. The court granted Northrop's motion and dismissed the loss-of-consortium claim without leave to amend. See Dkt. No. 20. This also dismissed Ms. Taylor-Smith as a plaintiff since she could not assert any other viable claim in this suit.

### C. Aftermath

During discovery, Plaintiff disclosed to Northrop that for the past two years, he had taken drafting courses at College of San Mateo. In June 2015, Northrop's Marine Systems plant had an opening for an entry level CADD Detail Drafter "B" position. On July 1, 2015, Plaintiff interviewed with Northrop for the drafter position, and on August 10, 2015, Northrop offered Plaintiff the job as a drafter. Plaintiff accepted the offer and is currently working with Northrop.

On October 16, 2015, Northrop filed the instant Motion for Summary Judgment. See Mot., Dkt. No. 48. This matter has been fully briefed. See Opp'n, Dkt. No. 52; Reply, Dkt. No. 53.

## II. LEGAL STANDARD

A motion for summary judgment or partial summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party does not satisfy its initial burden, the nonmoving party has no obligation to produce anything and summary judgment must be denied. Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102-03 (9th Cir. 2000). On the other hand, if the moving party does meet this initial burden, the burden then shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."

4
Case No.: 5:13-cv-03942-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324.  The court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324.  However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment.  See Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).  Instead, the non-moving party must come forward with admissible evidence to satisfy the burden.  Fed. R. Civ. P. 56(c); see also Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  However, where the nonmoving party will have the burden of proof at trial on a particular issue, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.  Provided there has been adequate time for discovery, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322-23.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

### III.  DISCUSSION

Northrop moves for summary judgment on each of Plaintiff's five claims, as well as Plaintiff's prayer for damages and punitive damages.  Each of these issues will be addressed.

#### A.  Claim #1: Disability Discrimination

Under the California Fair Employment and Housing Act ("FEHA"), it is unlawful for an employer to discharge a person from employment due to his physical disability.  Cal. Gov't Code § 12940(a).  "When entertaining motions for summary judgment in employment discrimination cases arising under state law, federal courts sitting in diversity must apply the McDonnell Douglas burden-shifting scheme as a federal procedural rule."  Zeinali v. Raytheon Co., 636 F.3d 544, 552

5

Case No.: 5:13-cv-03942-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   (9th Cir. 2011).  Under the McDonnell Douglas scheme, the employee "must first establish a
2   prima facie case of discrimination."  Id.  If the employee does so, the burden shifts to the employer
3   to "articulate a legitimate, nondiscriminatory reason for the challenged action."  Id.  If the
4   employer meets this burden, the burden shifts back to the employee to "show that the reason is
5   pretextual either directly by persuading the court that a discriminatory reason more likely
6   motivated the employer or indirectly by showing that the employer's proffered explanation is
7   unworthy of credence."  Id.

8   In this instance, Northrop moves for summary judgment on the following grounds:
9   (1) Plaintiff is unable to establish a prima facie case of disability discrimination; and alternatively,
10  (2) Plaintiff does not qualify for protection under FEHA.

### i. Prima Facie Case for Disability Discrimination

12  As an initial matter, the court notes the relevant timeframe for Plaintiff's disability
13  discrimination claim is from May 1, 2011 (date of Plaintiff's accident) to May 7, 2013 (date of
14  Plaintiff's termination).  Thus, the court will consider the parties' arguments and evidence in
15  relation to this timeframe.

16  "On a disability discrimination claim, the prima facie case requires the plaintiff to show he
17  or she (1) suffered from a disability, or was regarded as suffering from a disability; (2) could
18  perform the essential duties of the job with or without reasonable accommodations; and (3) was
19  subjected to an adverse employment action because of the disability or perceived disability."
20  Wills v. Super. Ct., 195 Cal. App. 4th 143, 159-60 (2011) (internal quotations omitted).  Here, the
21  parties focus solely on the second element: whether Plaintiff could perform the essential duties of
22  a welder.

23  California law defines "essential functions" as "the fundamental job duties of the
24  employment position the individual with a disability holds or desires."  Cal. Gov't Code §
25  12926(f).  A job function may be considered essential because: (1) "the reason the position exists
26  is to perform that function;" (2) "of the limited number of employees available among whom the

performance of that job function can be distributed;" or (3) "[t]he function may be highly specialized, so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function." Id. at § 12926(f)(1).  Evidence of whether a particular job function is essential includes: (1) "[t]he employer's judgment as to which functions are essential;" (2) "[w]ritten job descriptions prepared before advertising or interviewing applicants for the job;" (3) "[t]he amount of time spent on the job performing the function;" (4) "[t]he consequences of not requiring the incumbent to perform the function;" (5) "[t]he terms of a collective bargaining agreement;" (6) "[t]he work experiences of past incumbents in the job;" and (7) "[t]he current work experience of incumbents in similar jobs." Id. at § 12926(f)(2).

Essential functions do not include "marginal functions," such as those "that, if not performed, would not eliminate the need for the job or that could be readily performed by another employee or that could be performed in an alternative way." Id. at § 12926(f); Cal. Code Regs. tit. 2, § 11065(e)(3).  "A highly fact-specific inquiry is necessary to determine what a particular job's essential functions are." Cripe v. City of San Jose, 261 F.3d 877, 888 n.12 (9th Cir. 2001).

In its motion, Northrop argues that welding naval ship components is manual labor, and Plaintiff's work restrictions are incompatible with the essential job functions of a welder building naval ships.  Mot. at 11.  It further argues that during discovery, Plaintiff confirmed he could not perform tasks involving heavy physical labor. Id.  In response, Plaintiff argues that Northrop has failed to meet its burden of establishing what are the essential functions of a welder.  Opp'n at 4.  He suggests that Northrop's failure to identify the essential functions is fatal to its motion. Id.

"Although [the plaintiff] retains the burden of proof in making her prima facie case, [the defendant] has the burden of production in establishing what job functions are essential as much of the information which determines those essential functions lies uniquely with the employer." Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233, 1237 (9th Cir. 2012) (internal quotations omitted).  However, in this instance, it is apparent that a welder would be required to perform manual labor.  Thus, at issue is to what extent Plaintiff would be able to perform manual

7

Case No.: 5:13-cv-03942-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

labor such that he could continue to be a welder.

The evidence shows that Plaintiff's doctor wrote a letter dated April 16, 2012, advising that Plaintiff could not perform any manual labor, and had work restrictions regarding physical labor. See Def.'s Ex. 4. Further, Plaintiff wrote in his letter to Mr. MoDavis, dated March 6, 2013, that he could not perform heavy labor. See Pl.'s Ex. 8; Def.'s Ex. 22. Given this evidence, Plaintiff had the burden of showing there is a genuine issue for trial. Plaintiff, however, has failed to provide evidence showing that manual labor is not an essential function for a welder and that he could perform work as a welder.

In construing the facts in the light most favorable to Plaintiff, it does not appear there is a genuine dispute as to whether Plaintiff could perform the essential functions of a welder. As such, Plaintiff cannot make a prima facie case for disability discrimination.

### ii. Plaintiff's Qualification for FEHA Protection

Alternatively, Northrop appears to contend that Plaintiff does not qualify for protection under FEHA based on four grounds. First, Northrop argues that Plaintiff's receipt of Social Security Disability Insurance ("SSDI") benefits show he is completely disabled, since a certification of total disability is required to receive SSDI benefits. Mot. at 13. This argument, however, is unpersuasive because Plaintiff began to receive SSDI benefits after he was terminated from Northrop, and thus falls outside the relevant timeframe. Moreover, Northrop acknowledges that an employee who accepts SSDI benefits is not precluded from asserting a disability discrimination claim under FEHA. See id. at 12. As such, this argument is unavailing.

Second, Northrop argues that Plaintiff's disability rendered him unable to serve in jury duty in 2013, and thus suggests that Plaintiff was unable to perform any clerical or other sedentary work. Mot. at 14. To support this argument, Northrop offers two letters from Plaintiff's doctor dated October 2013 and March 2014, advising the jury commissioner to preclude Plaintiff from serving in jury duty due to his disability and/or medical condition. See Def.'s Ex. 25. As above, this argument is also unpersuasive because it falls outside the relevant timeframe. Moreover, there

8

Case No.: 5:13-cv-03942-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

is no indication that these letters can preclude a plaintiff from asserting a disability discrimination claim under FEHA. As such, this argument is also unavailing.

Third, Northrop contends that after termination, Plaintiff withdrew from the labor force and never looked for work, instead choosing to seek training in a different field. Mot. at 14. As such, Northrop argues that Plaintiff was not ready, willing, and able to work, and therefore, he cannot establish a prima facie case for disability discrimination. Id. This argument is misguided since it is not necessary for a prima facie case to show that Plaintiff was ready, willing, and able to work. For legal authority, Northrop relies on a dissenting opinion that discusses this issue as part of damages, not a prima facie case. Therefore, to the extent Northrop relies on this argument to contend Plaintiff cannot establish a prima facie case, it is unpersuasive.

Lastly, Northrop argues that Plaintiff's ability to resume work at Northrop as a drafter in 2015 was the result of having acquired new job skills, not due to a change in his health condition. Mot. at 14. This argument, however, is not relevant to the issue at hand since it falls outside the relevant timeframe. Moreover, it has no effect on any disability discrimination claim Plaintiff may have based on events and circumstances that occurred during the relevant timeframe. As such, this argument is also unpersuasive.

### iii. Conclusion as to Disability Discrimination Claim

In sum, the court has construed all facts in the light most favorable to Plaintiff, and determines that the evidence supports Northrop's argument that Plaintiff cannot establish a prima facie case of disability discrimination. As such, Northrop's motion as to this claim is GRANTED.

### B. Claim #2: Denial of Good Faith Interactive Process

FEHA provides it is unlawful "[f]or an employer . . . to fail to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability." Cal. Gov't Code. § 12940(n). "Although the interactive process is an informal process designed to identify a reasonable accommodation that

9
Case No.: 5:13-cv-03942-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

will enable the employee to perform his or her job effectively, an employer's failure to properly engage in the process is separate from the failure to reasonably accommodate an employee's disability and gives rise to an independent cause of action." Swanson v. Morongo Unified Sch. Dist., 232 Cal. App. 4th 954, 971 (2014) (internal citations omitted).

"The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees' with the goal of identifying an accommodation that allows the employee to perform the job effectively." Nadaf-Rahrov v. Neiman Marcus Grp., Inc., 166 Cal. App. 4th 952, 984 (2008). "The employee must initiate the process unless his or her disability and the resulting limitations are obvious," and "[o]nce initiated, the employer has a continuous obligation to engage in the interactive process in good faith." Swanson, 232 Cal. App. 4th at 971. "The employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed." Scotch v. Art Inst. of Cal.-Orange Cnty., Inc., 173 Cal. App. 4th 986, 1013 (2009).

However, it is the obligation of both parties to "to keep communications open and neither has a right to obstruct the process." Swanson, 232 Cal. App. 4th at 971-72. The obligation of each party includes "participat[ing] in good faith, undertak[ing] reasonable efforts to communicate its concerns, and mak[ing] available to the other information which is available, or more accessible, to one party." Id. at 972. "Liability hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith." Id.

Here, Northrop sets forth several arguments to contend Plaintiff caused the breakdown in the interactive process. First, Northrop argues that its managers met with Plaintiff and his Union representative to discuss Plaintiff's work restrictions, skills and experience, and other jobs he might be able to perform. Mot. at 16. Northrop further argues that it interviewed Plaintiff for a

10
Case No.: 5:13-cv-03942-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

position. Id. Thus, according to Northrop, it satisfied its duty to engage in the interactive process even if the outcome was unsatisfying. Id.

It is undisputed that in June 2012, Plaintiff met with Northrop managers and Union representatives to discuss his work restrictions and potential accommodations. It is also undisputed that Plaintiff subsequently interviewed with Northrop for an open tool stock controller position. Although Northrop began to engage in the interactive process, it had a continuing obligation to engage beyond these first attempts. See Scotch, 173 Cal. App. 4th at 1013. Indeed, California law supports the proposition that when Northrop became aware Plaintiff was not hired for the tool stock controller position, Northrop had the continued obligation to engage in the interactive process and find another potential accommodation. See id. Therefore, Northrop's argument that its obligation ended when it offered Plaintiff an interview is unpersuasive.

Second, Northrop contends that the letter it sent to Plaintiff in February 2013, regarding the two-year leave of absence, Plaintiff was instructed to contact HRSC if there were any changes in circumstances that would allow him to return to work. Mot. at 17. Northrop argues that since Plaintiff failed to communicate with HRSC, he failed to engage in the interactive process. Id. This argument, however, is unpersuasive because the letter is merely a notification regarding Plaintiff's two-year leave of absence, and is not sufficient to constitute an "interactive communication" with Plaintiff. Moreover, this argument is undermined by Plaintiff's March 2013 letter to Mr. MoDavis.

Third, Northrop argues that Plaintiff's letter to Mr. MoDavis in March 2013 cannot be grounds for this claim because Mr. MoDavis had no knowledge regarding Plaintiff's work restrictions. Mot. at 17. Northrop further argues that the letter itself did not identify any new job skills or health changes. Id.

In examining the evidence, it appears that after Plaintiff was not hired for the tool stock controller position, communications between Plaintiff and Northrop ceased until Plaintiff sent the March 2013 letter to Mr. MoDavis. In the letter, Plaintiff states that "[t]he purpose of this letter is

11

Case No.: 5:13-cv-03942-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

to initiate communications between [Northrop] and [Plaintiff] so that [he] can return to work to perform any work which [Northrop] has available, which [he] is able to perform." Pl.'s Ex. 8. While the letter is addressed to Mr. MoDavis, it shows that Mr. Noble was copied. See id. Given this evidence, it is irrelevant whether Mr. MoDavis had personal knowledge regarding Plaintiff's condition because he could have forwarded the letter to the appropriate person or department. Moreover, the letter indicates that Mr. Noble received a copy, which should have prompted Mr. Noble to contact Plaintiff. Instead, Mr. Noble admitted in his deposition that he did not contact Plaintiff after receiving the letter. See Dkt. No. 52, Dep. of Osmund Noble ("Noble Dep.") at 129. Furthermore, Plaintiff stated in his declaration that he left at least five voicemail messages to Mr. Noble, but none of the phone calls were returned. See Dkt. No. 52, Decl. of Nicholas Smith ("Smith Decl.") at ¶ 4. See also Nadaf-Rahrov, 166 Cal. App. 4th at 985 ("If the employer is responsible for a later breakdown in the process, it may be held liable."). Given this evidence, a reasonable juror could conclude that Northrop was liable for a breakdown in the interactive process.

Fourth, Northrop argues that Plaintiff acted in bad faith when he attached a doctor's note to his March 2013 letter to Mr. MoDavis, indicating that he had been cleared to return to work. Mot. at 17. Northrop argues that during discovery, Plaintiff admitted that his doctor did not independently evaluate his condition or ability to work, and that he had told the doctor what to write on the doctor's note. Id. at 17-18. While Plaintiff's conduct of instructing the doctor what to write on the note and submitting the note to Northrop is troubling, it is not fatal to Plaintiff's claim. This is so because there is no indication Northrop relied on the doctor's note to either communicate or fail to communicate with Plaintiff. Moreover, the issue of whether it would have been reasonable for Northrop to rely on the doctor's note in determining whether to engage in the interactive process with Plaintiff is more appropriate for a jury to decide.

Lastly, Northrop argues that Plaintiff is liable for the breakdown in the interactive process because he did not specifically identify a job position for which he was qualified. Mot. at 16.

12
Case No.: 5:13-cv-03942-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Northrop argues that Plaintiff offered only vague and conclusory labels of his capabilities, such as "clerical," "computer" work, or "managerial capacity," but he did not have any training or experience beyond welding and physical labor. Id. Moreover, Northrop argues that Plaintiff failed to contact the Union to inquire about jobs, and failed to utilize Northrop's "careers" website to search for job openings. Id. at 16-17. This argument is unavailing. The evidence shows that through the two letters Plaintiff submitted to Northrop in June 2012 and March 2013, Plaintiff clearly expressed his desire to return to work and suggested ways in which he could contribute. See Scotch, 173 Cal. App. 4th at 1013 ("Although it is the employee's burden to initiate the process, no magic words are necessary, and the obligation arises once the employer becomes aware of the need to consider accommodation."). Also, Mr. Noble testified at his deposition that he never asked Plaintiff whether he could access the "careers" website nor did he ever provide Plaintiff with any information about the existence of the "careers" website. See Noble Dep. at 59. Regardless of whether Plaintiff identified a specific position, Northrop was in a better position to inform Plaintiff of vacant positions for which Plaintiff could qualify.

Furthermore, the purpose of the interactive process is to determine what positions are available; thus, had there been a good faith process, it could have revealed solutions that neither party envisioned. See Scotch, 173 Cal. App. 4th at 1016. Instead, Plaintiff states that after his interview for the tool stock controller position, he received no feedback from Northrop nor was he told of other potential positions for which he could apply. See Smith Decl. at ¶ 4. Also, it does not help Northrop that Mr. Noble testified at his deposition that he had never heard of the phrase "interactive process" as it relates to disability issues. See Noble Dep. at 56. Given these considerations, the court finds Northrop's arguments to be unpersuasive.

Therefore, in construing all the facts in the light most favorable to Plaintiff, a reasonable juror could find that Northrop failed to engage in a timely, good faith, interactive process with Plaintiff. Given the genuine dispute as to Northrop's involvement and reasonableness of its conduct, Northrop's motion as to this claim is DENIED.

### C. Claim #3: Failure to Accommodate

Under FEHA, an employer is required to provide reasonable accommodations. Cal. Gov't Code § 12940(m). "A reasonable accommodation is any modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." Swanson, 232 Cal. App. 4th at 968-69 (internal quotations omitted). However, the employer is not required "to make an accommodation that is demonstrated by the employer or other covered entity to produce undue hardship to its operations." Id. at 969 (internal quotations omitted).

At the summary judgment stage, an employer can prevail only if "it establishes through undisputed facts that reasonable accommodation was offered and refused, that there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation, or that the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith." Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 743-44 (9th Cir. 2011).

Since no reasonable accommodation was offered and refused, the court will proceed to the second factor: whether Northrop can establish through undisputed facts that there simply was no vacant position for which Plaintiff was qualified and was capable of performing. Northrop argues there was no vacant position for which Plaintiff was qualified since his training and skills were limited to industrial manual labor. Mot. at 20. Moreover, Northrop argues there were four potential positions available for Plaintiff, but Northrop concluded that Plaintiff was either unqualified for those positions or lacked sufficient seniority under the CBA to take those positions. Id. In response, Plaintiff contends the individuals hired to fill those positions had the same level of skill as Plaintiff, thus he was not unqualified. Opp'n at 6. Further, Plaintiff argues the CBA contains a "special situations" provision that exempts an employee from the seniority system; thus, Northrop could have invoked such provision in order to hire Plaintiff for one of the

14

Case No.: 5:13-cv-03942-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

vacant positions regardless of seniority. Id.

Although there is a dispute of material fact as to whether Plaintiff was qualified for any of the four potential positions, the central issue revolves around the seniority system and the existence of a "special situations" provision in the CBA. It is undisputed that the CBA provides for a seniority system. See Def.'s Ex. 7, Article IX. It is also undisputed that the CBA contains the following "special situations" provision:

> Notwithstanding the provisions of this Agreement, the Union and the Company may, in special situations, work out individual cases where it is agreed that such special situations exist, and the Union and the Company must mutually agree to the implementation.

See id., § L; Pl.'s Ex. 13.

Under California law, "[t]he obligation to reassign a disabled employee who cannot otherwise be accommodated does not require . . . violating another employee's rights under a collective bargaining agreement." Hastings v. Dep't of Corr., 110 Cal. App. 4th 963, 972 (2003). Moreover, the Ninth Circuit has held that "an accommodation that is contrary to the seniority rights of other employees set forth in a CBA would be unreasonable per se."[2] Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 679 (9th Cir. 2001).

Here, there is a genuine dispute as to whether the "special situations" provision could have been invoked and applied to Plaintiff so that he could trump another employee's seniority and take the vacant position. In Mr. Noble's deposition, he testified that the provision "probably could apply" to Plaintiff, but he did not apply it because the Union did not request that Northrop make a special situation for Plaintiff. Noble Dep. at 62, 86. According to Mr. Noble, the provision provides that the Union and Northrop determine whether to invoke the provision; since the provision was not invoked by either, its application to Plaintiff was not considered. Id. at 86. Mr. Noble further testified that he does not think the "special situations" provision has ever been used,

---

[2] Since "FEHA's accommodation requirements are modeled on the [Americans with Disabilities Act ("ADA")] . . . federal decisions interpreting the ADA are instructive in applying FEHA." Nealy v. City of Santa Monica, 234 Cal. App. 4th 359, 375 n.1 (2015).

and he does not know why this provision was put into the CBA. Id. at 67. Given the genuine dispute as to whether the "special situations" provision could be invoked and whether it could have applied to Plaintiff, it is more appropriate for a jury to decide.

The court now proceeds to the third factor: whether Northrop can establish through undisputed facts that it did everything in its power to find a reasonable accommodation, but the interactive process broke down because Plaintiff failed to engage. As determined above, Northrop has not established this. See supra, § III(B); see also Gelfo v. Lockheed Martin Corp., 140 Cal. App. 4th 34, 54 (2006) ("While a claim of failure to accommodate is independent of a cause of action for failure to engage in an interactive dialogue, each necessarily implicates the other.").

Therefore, in construing the facts in the light most favorable to Plaintiff, a reasonable juror could find that Northrop failed to provide a reasonable accommodation because there may have been an available position that Plaintiff could have filled and Northrop did not do everything in its power to find a reasonable accommodation. The court determines there are genuine disputes of material fact as to whether Plaintiff was qualified for any of the four potential positions, whether Northrop could have invoked the "special situations" provision of the CBA to override the seniority system, and whether Northrop failed to engage in the interactive process. Accordingly, Northrop's motion as to this claim is DENIED.

### D. Claims #4 and #5: Failure to Prevent Discrimination, and Violation of Public Policy

Northrop moves for summary judgment on Plaintiff's claims for failure to prevent discrimination and violation of public policy, solely on the ground that Plaintiff's underlying FEHA claims fail. Mot. at 23. To the extent this argument is the only basis for Northrop's motion, it is unavailing. Given that two FEHA claims will be proceeding, Northrop's motion as to Plaintiff's fourth and fifth claims is DENIED.

### E. Plaintiff's Damages

Northrop moves for summary judgment on the grounds that Plaintiff has no actionable

damages or remedies. Mot. at 23. Northrop argues that because Plaintiff did not look for work after he was terminated, he cannot recover back pay or front pay due to loss of earnings, he is not entitled to general damages because he suffered no economic harm, and he is precluded from securing reinstatement as a remedy. Id. at 23-24. In response, Plaintiff argues that he has damages because he did not voluntarily leave Northrop. Opp'n at 16.

Under California law, the plaintiff has a "duty" to mitigate damages—also known as the avoidable consequences doctrine. State Dep't of Health Servs. v. Super. Ct., 31 Cal. 4th 1026, 1043 (2003). Under this doctrine, "a person injured by another's wrongful conduct will not be compensated for damages that the injured person could have avoided by reasonable effort or expenditure." Id. The burden of proving this defense lies on the defendant, and the defense affects only damages, not liability. Id. at 1044-45. Where the plaintiff has failed to adequately seek other employment, the Ninth Circuit has found that to satisfy its burden, the employer "has to prove that, based on undisputed facts in the record, during the time in question there were substantially equivalent jobs available, which the plaintiff could have obtained, *and* that the plaintiff failed to use reasonable diligence in seeking one."[3] Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1497 (9th Cir. 1995) (emphasis in original) (internal quotations omitted).

Here, Northrop has not offered evidence showing that during the time in question, there were substantially equivalent jobs available that Plaintiff could have obtained. To the extent Northrop has listed four potential positions in a different section of its brief (see Mot. at 20-21), it does not appear Northrop relies on these positions to make its argument concerning damages since, according to Northrop, Plaintiff was not qualified for those positions. Given the absence of evidence to support Northrop's defense, the motion as to this issue must be DENIED.

**F.   Punitive Damages**

Lastly, Northrop moves for summary judgment on Plaintiff's prayer for punitive damages.

---

[3] As with the ADA, "California courts often look for guidance to decisions construing federal antidiscrimination laws, including Title VII." Williams v. Chino Valley Indep. Fire Dist., 61 Cal. 4th 97, 109 (2015).

17
Case No.: 5:13-cv-03942-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1  Pursuant to California Civil Code § 3294(a), "the jury may award punitive damages where it is
2  proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud,
3  or malice." Roby v. McKesson Corp., 47 Cal. 4th 686, 712 (2009).
4  Here, Plaintiff basis his prayer for punitive damages on certain comments Mr. Noble made
5  to Plaintiff, such as that Plaintiff "didn't have the skills for anything," and that his "seniority
6  means nothing." Opp'n at 17; see Smith Decl. at ¶ 4; Dep. of Nicholas Smith at 192. Plaintiff
7  contends these statements caused him to have the first in a series of panic attacks, and were
8  sufficiently demeaning, harassing and malicious to support an award of punitive damages. Opp'n
9  at 17. Northrop, however, argues that Plaintiff cannot prove by clear and convincing evidence that
10 it acted with oppression, fraud, or malice. Mot. at 25; Reply at 14.
11 The court determines there is a genuine dispute of material fact as to whether Mr. Noble's
12 statements are sufficient to show that Northrop acted with oppression, fraud, or malice, and
13 thereby warrant an award of punitive damages. Given this determination, Northrop's motion as to
14 punitive damages is DENIED.

## IV. CONCLUSION

Based on the foregoing, Northrop's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.

The motion is GRANTED as to the disability discrimination claim. The motion is DENIED as to the remaining claims: (1) denial of good faith interactive process; (2) failure to accommodate; (3) failure to prevent discrimination; (4) discrimination in violation of public policy; (5) Plaintiff's prayer for damages; and (6) Plaintiff's prayer for punitive damages.

**IT IS SO ORDERED.**

Dated: December 15, 2015

_____
EDWARD J. DAVILA
United States District Judge